Charles C. Gokey, CA Bar No. 295610
cgokey@engstromlee.com
Carl F. Engstrom, MN Bar No. 0396298*
cengstrom@engstromlee.com
ENGSTROM LEE LLC
323 N Washington Ave., Suite 200
Minneapolis, MN 55401
T. (612) 305-8349; F. (612) 677-3050
*Pro Hac Vice Application Forthcoming
Counsel for Plaintiff

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| Gustavo Moran, as the representative of a class of similarly situated persons, and on behalf of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan,<br><br>Plaintiff,<br><br>v.<br><br>ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan,<br><br>Defendant. | Case No. 8:24-cv-00642<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) Violations of Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* |

## NATURE OF THE ACTION

1.      Plaintiff Gustavo Moran ("Plaintiff"), as the representative of the Class described herein, and on behalf of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan (the "ESOP"), brings this action pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), against the ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan (the "ESOP Committee" or "Defendant"). This case is about Defendant's failure to invest the non-employer stock assets of the ESOP prudently and for the exclusive benefit of ESOP participants. The foregoing violated Defendant's fiduciary duties under ERISA, 29 U.S.C. §§ 1104(a)(1) and 1106(a).

## PARTIES

2.      The ESOP is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A); a "defined contribution plan" as defined by 29 U.S.C. § 1002(34) (also known as an "individual account plan"); and an "employee stock ownership plan" as defined by 29 U.S.C. § 1007(d)(6). The ESOP is sponsored by Aluminum Precision Products, Inc. ("APP") for the benefit of its employees.

3.      Plaintiff Gustavo Moran is a natural person and a resident of Perris, CA. He is a current participant in the ESOP. He worked for APP between 2008 and 2021. His ESOP benefit is determined by the value of the ESOP's assets. His benefit would be worth more if not for Defendant's violations of ERISA.

4.      Defendant is the ESOP's governing committee established by the written terms of the ESOP. Defendant directs the ESOP's trustee with respect to how to invest ESOP assets. Accordingly, Defendant is a fiduciary of the ESOP pursuant to 29 U.S.C. § 1002(21)(A)(i).

5.      Upon information and belief, Defendant is comprised of senior executives of APP.

-1-

## JURISDICTION AND VENUE

6. Plaintiff brings this action pursuant to 29 U.S.C. §§ 1132(a)(2) and (3), which provide that a participant in an employee benefit plan may pursue a civil action on behalf of the plan to remedy violations of ERISA and obtain monetary and appropriate equitable relief.

7. This case presents a federal question under ERISA and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

8. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) because Defendant's violations of ERISA occurred in Santa Ana, CA, where APP is located and where the ESOP is administered.

## DEFENDANT'S ACTIONS AND OMISSIONS WITH RESPECT TO THE ESOP'S OTHER INVESTMENTS ACCOUNT

9. APP established the ESOP in 2009 to provide retirement benefits to employees. There are around 800 participants in the ESOP.

10. The ESOP is one of two retirement plans offered by APP, the other being a 401(k) plan. All ESOP participants automatically participate in the 401(k). The 401(k) plan has roughly twice the amount of assets as the ESOP. Because employee stock ownership plans such as the ESOP invest primarily or exclusively in a single security, they have an aggressive risk tolerance, with the primary investment objective being capital appreciation.

11. Each participant's ESOP benefit is determined by the value of their individual account.

12. The ESOP has two types of assets: APP stock and other investments. The other investments are known as the "Other Investments Account" (hereinafter "OIA").

-2-

13. Each participant's account value is their *pro rata* share of the ESOP's total asset value. Participants are credited with a share of company contributions and APP stock allocations while employed by APP. Participant credits are then adjusted over time by investment gains, losses, and income received by the ESOP with respect to its APP stock and OIA investments.

14. The ESOP purchased APP stock in two transactions in 2011 and 2012. Between 2012 and 2017, the ESOP owed APP a note that was used to finance the ESOP's acquisition of APP stock. The APP shares purchased by the ESOP served as collateral for the note.

15. The ESOP used cash contributions and APP stock dividends to satisfy the note in full between 2012 and 2017, which resulted in all of the ESOP's APP shares being released from the collateral account and allocated to participant accounts.

16. Since 2017, the ESOP has continued to receive cash contributions and dividends. Because the ESOP has fully satisfied its acquisition debt for APP shares, these contributions and dividends have accumulated in the OIA.

17. Participants have no control over the investment of the OIA and rely on Defendant to prudently invest the OIA funds for the purpose of increasing the value of their individual accounts.

18. Between 2018 and 2022, the ESOP averaged around $5.5 million in the OIA. At the end of 2022, the balance was over $6 million.

19. At all times, Defendant has kept the OIA invested exclusively in assets on the lowest end of the risk-return spectrum. Between 2018 and 2021, Defendant invested the entire OIA balance in a money market fund. In 2021, Defendant moved around half the OIA balance to a fund that invests in short-term U.S. treasury bonds, keeping the remainder in a money market fund.

-3-

20.    Defendant's investment of the OIA is unusual, self-serving, and imprudent. Money market funds and short-term treasury bond funds are appropriate only if the investor has a short-term investment objective, needs to preserve their principal balance, and cannot tolerate market risk. These investments are not designed or expected to provide competitive long-term growth needed by retirement plan participants such as Plaintiff and the Class. In fact, these investments often do not keep pace with inflation over time.

21.    A prudent fiduciary would have been aware of these facts. In the twenty-year period between 1998 and 2017, the ICE BofA 3-month Treasury bill index—the index used most often for money market funds—averaged returns of 2.07% per year. During that same period, the Bloomberg US Government/Credit 1-3 Year Bond Index averaged 3.41% per year. A $10,000 investment earning these rates of return would be worth $15,065 and $19,555 respectively, but only $9,857 and $12,795 when adjusted for inflation, which averaged 2.14% per year from 1998 to 2017.

22.    In contrast, despite going through two of the most severe bear markets in the past century during this span, from 1997 to 2017 the S&P 500—the index used most often to measure large company domestic stocks—averaged a 7.20% rate of return, while the Russell 2000—the index most often used to measure small company domestic stocks—averaged a 7.89% rate of return. A $10,000 investment in each index would be worth $40,170 and $45,669 respectively, and still worth $26,283 and $29,881 when adjusted for inflation. These returns are not only consistent with average cash, short-term bond, and stock returns over the past century, they actually understate how equities have performed.

23.    Given the superior long-term returns of equity investments, defined contribution plans tend to be heavily invested in them, which is then reflected in their returns. For example, between 2017 and 2021, the median defined contribution

-4-

retirement plan earned around 11.80% per year on investments. The OIA earned only around 0.90% per year during the same period.

24.    Even during market downturns for typical retirement portfolio assets, such as pooled stock funds, the long-term average return of an appropriate growth-seeking portfolio will exceed the yield of a portfolio that consists solely of short-term assets. For example, despite typical retirement assets being down around 10%-20% in 2022, the median plan sustained a 5-year average (2018-2022) return of around 4.66% per year, versus around 0.50% for the OIA. These low returns for the OIA assets were foreseeable. The rate of return on cash investments is determined by the general interest rate environment, and money market funds publish the current 30-day yield for the fund. It was therefore foreseeable that the Plan's cash investments would earn less than 1% per year.

25.    After stock and bond markets rebounded in whole or in part since the end of 2022, the long-term delta between the OIA and a typical retirement portfolio likely increased toward prior levels.[1] Since 2017, the ESOP has lost millions in earnings due to Defendant's failure to invest the OIA in appropriate investments consistent with the Plan's capital appreciation objectives. For example, had Defendant invested the Plan's OIA assets in an index fund tracking the S&P 500 between 2018 and the end of 2023 instead of the cash and short-term investments they used, Plaintiff estimates the Plan's participants would have approximately $5.8 million more in their accounts as of the end of 2023.

26.    Prudent ESOP fiduciaries acting under similar circumstances do not sideline the other investments portion of their ESOP exclusively in short-term assets, as Defendant has done. One strategy is to allow participants to direct the other investments portion of their accounts to pooled funds that offer exposure to stocks,

---

[1] Analysis of 2023 plan investment returns will be possible in late 2024 when retirement plans report their financial results to the Department of Labor and the Internal Revenue Service.

-5-

more diversified bond investments, and other assets such as real estate. This is accomplished by offering those options within the ESOP or allowing participants to move the other investments portion of their accounts to the company's 401(k) plan.

27.    Even where the ESOP fiduciary retains sole investment discretion with respect to other investments, Defendant's conduct is not the norm. In ESOPs that accumulate excess cash subject to fiduciary direction, prudent and loyal fiduciaries invest the other investments portion of the plan in assets that offer greater potential for long-term capital appreciation such as equities.

28.    For example, fiduciaries of the SCS Engineers Employee Stock Ownership Plan have kept approximately 95% of the plan's OIA assets in common stocks over the past six years, while retaining less than 1% of its OIA assets in cash. Similarly, fiduciaries of the Great Lakes Cheese Co., Inc. Employee Stock Ownership Plan have kept almost all of the plan's OIA account invested in common stock investments. Though the plan has on occasion had year-end cash balances, the fiduciaries have consistently put those cash assets to work in long-term investments, and do not allow them to sit idle over longer periods of time.

29.    Defendant's failure to invest the OIA in investments consistent with the ESOP's risk tolerance and financial objectives is not excused by its practice of using the ESOP to repurchase APP shares from participants eligible for distribution and then reallocating those shares to current participants.

30.    A condition of a privately held company offering an ESOP is that the company must offer a "put option" to employees entitled to a distribution from the plan. 26 U.S.C. § 409(h). A put option is the "right to require that the employer repurchase employer securities under a fair valuation formula." *Id.* § 409(h)(1)(B). The repurchase obligation cannot be placed upon the ESOP: "Under no circumstances may the put option bind the ESOP." 29 C.F.R. § 2550.408b-3(j).

-6-

31. Defendant's practice of keeping over $5 million of the ESOP's assets in short-term investments and dutifully using those funds—instead of company funds—to repurchase stock demonstrates that Defendant's process for selecting and monitoring OIA investments is driven by company interests and not solely by the interest of ESOP participants in increasing their retirement benefits.

32. Defendant caused the ESOP to repurchase an average of around $1.5 million of APP stock per year from departing participants between 2018 and 2022. Repurchases never exceeded $1.9 million in a year.

33. An ESOP fiduciary may elect, but is not required, to repurchase shares instead of the company. Such a decision is subject to ERISA fiduciary duties, and the repurchase transaction must be a prudent investment action for ESOP participants at the time the employee seeks to redeem their stock.

34. There is no special value to be captured by the ESOP in repurchasing redeemed shares, as the shares must be purchased at the stock's current fair market value. 26 U.S.C. § 409(h)(1)(B). Thus, it does not make sense to invest the entire OIA in short-term assets earning nearly nothing for the sole purpose of ensuring that is cash available in future years to purchase additional employer stock.

35. To the extent that Defendant has sidelined OIA funds in short-term investments as a reserve for possible APP share repurchases years down the line, that action is imprudent and self-serving. The ESOP's average annual income from contributions and dividends between 2018 and 2022 was around $2.5 million—more than enough to cover the APP share repurchase opportunity from current income without the need for a reserve. Regardless, forfeiting growth opportunities in an effort to preserve principal for possible APP share repurchases in the future, the merit of which cannot be foreseen, does not serve the interest of participants in increasing their retirement savings, and was inconsistent with the Plan's aggressive risk tolerance and capital appreciation objectives.

-7-

36.     While adopting a principal preservation strategy for the OIA does not serve participants, it does benefit the company. Maintaining a stable backup reserve provides security for the company regarding its long-term share repurchase liability, avoiding cash flow issues that can be caused by participants retiring and needing to cash out their shares. APP's practice also means that the dividends paid by the company to the ESOP, as shareholders, are still being used to support the business needs of the corporation. APP's practice of accumulating cash reserves to repurchase shares from departing employees provides significant tax advantages compared to a strategy where the corporation builds a cash reserve for the same purposes.

37.     ERISA prohibits fiduciaries from using plan assets for the benefit of the company and from subordinating participant interests to company interests. Defendant violated ERISA to the extent its OIA investment strategy is influenced by the long-term share repurchase liability of the company.

## **PLAINTIFF'S LACK OF ACTUAL KNOWLEDGE**

38.     Until shortly before filing this action, Plaintiff lacked knowledge of material information to support his claims. Among other things, he lacked knowledge of the amount of cash held by the ESOP. He lacked knowledge that the company was using the cash balances held by the ESOP to repurchase shares from departing employees. He also lacked knowledge of the conduct of similarly situated ESOP fiduciaries responsible for investing the non-employer stock portion of their plans. He lacks actual knowledge of Defendant's process for selecting and monitoring OIA investments and has no means to access information related to Defendant's process until discovery commences. Plaintiff's allegations are based on inferences drawn from the facts adduced to date and are made upon information and belief and in reliance on the investigation of counsel.

-8-

## PLAN-WIDE RELIEF

39.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the ESOP to bring an action on behalf of the ESOP to obtain for the ESOP the remedies provided by 29 U.S.C. § 1109(a). Plaintiff seeks recovery on behalf of the ESOP pursuant to this statutory provision.

40.    Plaintiff seeks recovery for injuries to the ESOP sustained as a result of fiduciary breaches and seeks equitable relief on behalf of the ESOP as a whole pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

41.    Plaintiff is adequate to bring this derivative action on behalf of the ESOP, and his interest is aligned with other participants and beneficiaries. Plaintiff does not have any conflicts of interest with any participants or beneficiaries that would impair or impede his ability to pursue this action. Plaintiff has retained counsel experienced in ERISA litigation and intends to pursue this action vigorously on behalf of the ESOP.

## CLASS ACTION ALLEGATIONS

42.    Plaintiff additionally and alternatively seeks certification of this action as a class action pursuant to Fed. R. Civ. P. 23.

43.    Plaintiff asserts his claims on behalf of a class of participants and beneficiaries of the ESOP defined as follows:

> All participants and beneficiaries of the ESOP since the date that is six years prior to the filing of this action.

44.    Numerosity: The Class is so numerous that joinder of all Class members is impracticable. The ESOP had hundreds of participants during the relevant period.

45.    Typicality: Plaintiff's claims are typical of the Class members' claims. Like other Class members, Plaintiff was an ESOP participant and Plaintiff suffered injuries as a result of Defendant's violations of ERISA. Defendant treated Plaintiff

-9-

consistently with other Class members with regard to the ESOP. Defendant's improper actions affected all ESOP participants similarly.

46.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the Class that he seeks to represent, and he has retained counsel experienced in complex class action litigation, including ERISA litigation. Plaintiff does not have any conflicts of interest with any Class members that would impair or impede his ability to represent such Class members.

47.    Commonality: Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including but not limited to:

      a.    Whether Defendant was a fiduciary with respect to the ESOP and the scope of its fiduciary duties;

      b.    Whether Defendant failed to comply with the ERISA fiduciary standards of prudence and loyalty in violation of 29 U.S.C. § 1104(a)(1);

      c.    Whether Defendant invested ESOP assets for the benefit of the company, a party in interest the ESOP, in violation of 29 U.S.C. § 1106(a);

      d.    The proper form of equitable and injunctive relief; and

      e.    The proper measure of monetary relief.

48.    Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions against Defendant would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

49.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(1)(B) because adjudications with respect to individual Class members, as a practical matter, would be dispositive of the interests of the other persons not parties to the individual

-10-

adjudications or would substantially impair or impede their ability to protect their interests. Any award of equitable relief by the Court, such as disgorgement of proceeds of the prohibited transactions and allocation of the proceeds to participants, would be dispositive of the interests of all participants.

50.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct as described in this Complaint applied uniformly to all members of the Class. Class members do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claims is relatively small compared to the expense and burden of prosecuting claims of this nature. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's actions. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

51.     Plaintiff and his undersigned counsel will provide notice to the class to the extent required by Fed. R. Civ. P. 23(c)(2) and the Court.

## COUNT I

### 29 U.S.C. § 1104(a)(1)

52.     Plaintiff incorporates the foregoing paragraphs by reference.

53.     Defendant is the ESOP fiduciary with discretion concerning how the ESOP assets contained within the OIA are invested.

54.     Defendant violated ERISA fiduciary standards set forth in 29 U.S.C. § 1104(a)(1) by failing to prudently invest the OIA in a manner consistent with the

-11-

investment objectives of the ESOP and its participants, and by allowing company interests to dictate its investment strategy.

55. Defendant's violation of 29 U.S.C. § 1104(a)(1) caused the ESOP injury in the form of lost investment earnings, and Defendant's deficient fiduciary conduct threatens future harm to the ESOP of the same character. These injuries to the ESOP adversely affected and continue to affect Plaintiff's ESOP account.

56. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiff, the ESOP, and the Class are entitled to recover losses caused by Defendant's violation of 29 U.S.C. § 1104(a)(1) and other equitable and injunctive relief.

## COUNT II

### 29 U.S.C. § 1106(a)

57. Plaintiff incorporates the foregoing paragraphs by reference.

58. Defendant is the ESOP fiduciary with discretion concerning how the ESOP assets contained within the OIA are invested.

59. The company, APP, is a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(C) because its employees are the ESOP's participants.

60. Defendant violated 29 U.S.C. § 1106(a)(1)(D) by using the OIA funds for the benefit of APP by pursuing a heavily conservative investment strategy designed to preserve the principal balance of the OIA for the purpose of relieving APP from its obligation to repurchase shares when employees request a distribution from the ESOP.

61. Defendant's violation of 29 U.S.C. § 1106(a) caused the ESOP injury in the form of lost investment earnings, and Defendant's deficient fiduciary conduct threatens future harm to the ESOP of the same character. These injuries to the ESOP adversely affected and continue to affect Plaintiff's ESOP account.

-12-

62.     Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2)-(3), Plaintiff, the ESOP, and the Class are entitled to recover losses caused by Defendant's violation of 29 U.S.C. § 1106(a) and other equitable and injunctive relief.

**PRAYER FOR RELIEF**

63.     Wherefore, Plaintiff prays for judgment against Defendant and for the following relief:

      A.     Certify Plaintiff's authority to seek plan-wide relief on behalf of the ESOP pursuant to 29 U.S.C. § 1132(a)(2);

      B.     Alternatively, certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify Plaintiff as the class representative, and certify his counsel as class counsel;

      C.     Order Defendant to make good to the ESOP all losses resulting from its violations of ERISA;

      D.     Impose equitable and injunctive relief sufficient to protect ESOP participants, including changes to Defendant's investment process and/or appointment of independent investment advisors and managers;

      E.     Award Plaintiff reasonable attorneys' fees and costs incurred pursuant to 29 U.S.C. § 1132(g), and/or pursuant to the common fund method;

      F.     Award prejudgment and post-judgment interest; and

      G.     Award such other and further relief as the Court deems just and equitable.

-13-

Respectfully Submitted,

ENGSTROM LEE LLC

DATED: March 27, 2024

*/s/ Charlie C. Gokey*

Charles C. Gokey, CA Bar No. 295610
cgokey@engstromlee.com
Carl F. Engstrom, MN Bar No. 0396298*
cengstrom@engstromlee.com
323 N Washington Ave., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
Facsimile: (612) 677-3050

*\*Pro Hac Vice Application Forthcoming
Counsel for Plaintiff*

-14-