UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 24-00642-MWF (ADSx)     **Date:** January 28, 2026

Title: Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):**    ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [94]

Before the Court is a Motion for Judgment on the Pleadings (the "Motion") filed by Defendant ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan (the "APP ESOP Committee") on December 2, 2025. (Docket No. 94). Plaintiff Gustavo Moran filed an Opposition on January 5, 2026. (Docket No. 96). Defendant filed a Reply on January 12, 2026. (Docket No. 97).

The Court has considered the papers filed in connection with the Motion and held a hearing on **January 26, 2026**.

The Court rules as follows:

- The Motion is **DENIED** as to Plaintiff's prudent investor claim. The diversification exemption for ESOPs does not bar Plaintiff's claim based on the APP ESOP's OIA. Moreover, Plaintiff has alleged Defendant's imprudence with the requisite plausibility.

- The Motion is **DENIED** as to Plaintiff's prohibited transaction claim. Plaintiff has plausibly alleged that Defendant caused the Plan to engage in at least one affirmative investment transaction to create an allegedly excessive liquidity buffer for the employer's benefit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SACV 24-00642-MWF (ADSx)				Date:  January 28, 2026
Title:	Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan

## I. BACKGROUND

Plaintiff initiated this action on March 26, 2024.  (*See* Complaint (Docket No. 1)).  Plaintiff then filed a First Amended Complaint ("FAC") on June 28, 2024.  (Docket No. 22).  Defendant filed an Answer on September 13, 2024.  (Docket No. 37).

This action concerns the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA").  (FAC ¶ 1).  Plaintiff brings this ERISA derivative class action on behalf of the Aluminum Precision Products, Inc. Employee's Stock Ownership Plan (the "APP ESOP" or "Plan") and on behalf of a class of "[a]ll participants and beneficiaries of the [APP] ESOP since the date that is six years prior to the filing of this action."  (*Id.* ¶¶ 1, 75).

Aluminum Precision Products, Inc. ("APP") established the APP ESOP in 2009 to provide retirement benefits to its employees.  (*Id.* ¶¶ 2, 9).  Today, the Plan has approximately 800 participants.  (*Id.* ¶ 9).  Participants do not control investments and instead rely on Defendant, the APP ESOP Committee, to make investment decisions for the Plan.  (*Id.* ¶ 16).

An ESOP is "a type of pension plan that invests primarily in the stock of the company that employs the plan participants."  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014).  Accordingly, the APP ESOP holds primarily APP stock, though the Plan also holds an "Other Investments Account" (the "OIA"), which consists of assets distinct from APP stock.  (FAC ¶ 11).

In 2011 and 2012, the Plan purchased APP stock via a loan.  (*Id.* ¶ 13).  From 2012 to 2017, the Plan used dividends earned from the APP stock and cash contributions from APP to pay back the loan.  (*Id.* ¶ 14).  Since 2017, with the loan paid in full, the Plan has continued to receive dividends and cash contributions which have accumulated in the OIA.  (*Id.* ¶ 15).  The OIA has grown to represent approximately 20–25% of the Plan's total assets.  (*Id.* ¶ 3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 24-00642-MWF (ADSx) | **Date:** January 28, 2026 |
| **Title:** Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan | |

Plaintiff alleges that, from 2018 through 2021, Defendant invested these OIA assets exclusively in a money market fund. (*Id.* ¶ 18). In 2021, Defendant allegedly moved roughly half of the OIA assets into a short-term U.S. Treasury bond fund, leaving the other half in a money market fund. (*Id.*). Plaintiff alleges that, by holding OIA assets in cash equivalents and short-term treasuries as opposed to stock and bond index funds, Defendant has caused Plan participants to miss out on significant investment returns. (*Id.* ¶¶ 67–68). Plaintiff also alleges this strategy is inconsistent with the Plan's objectives. The Plan was established and is structured as a "retirement plan." (*Id.* ¶ 28). Therefore, Plaintiff alleges that Plan participants "have a high tolerance for risk associated with short-term market volatility and need an investment strategy focused on long-term capital appreciation." (*Id.* ¶ 36).

Based on the foregoing, Plaintiff alleges "that Defendant failed to engage in a prudent process to investigate and structure an appropriate investment strategy for the OIA." (*Id.* ¶ 63). Plaintiff further alleges that "Defendant was guided by improper, self-serving considerations concerning OIA investments," namely, that APP kept a large liquid OIA balance so that "the company [could] use the OIA has a backup reserve to satisfy its long-term liability to repurchase shares from departing participants." (*Id.*).

Based on the above allegations, Plaintiff brings the following two claims: (1) breach of fiduciary duties in violation of 29 U.S.C. § 1104(a)(1); and (2) prohibited transaction in violation of 29 U.S.C. § 1106(a). (*Id.* ¶¶ 84–94).

## II.   LEGAL STANDARD

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The analysis for Rule 12(c) motions for judgment on the pleadings is "substantially identical to [the] analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 24-00642-MWF (ADSx) | **Date:** January 28, 2026 |
| **Title:** Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan | |

A motion for judgment on the pleadings should only be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). In reviewing a Rule 12(c) motion, "all factual allegations in the complaint [must be accepted] as true and construe[d] . . . in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings under Rule 12(c) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006) (citation omitted).

## III. REQUEST FOR JUDICIAL NOTICE

In its Motion, Defendant requests judicial notice or incorporation by reference of the APP ESOP "Plan Document," which is attached to the Motion as Exhibit A. (Motion at 5 n.1).

Plaintiff does not oppose the request. (Opp. at 5 n.1). The Court agrees it may properly consider the Plan Document, which is referenced and relied upon in the FAC. (*See, e.g.*, FAC ¶¶ 4, 20, 22–23); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (discussing incorporation by reference).

Accordingly, Defendant's request is **GRANTED**.

## IV. DISCUSSION

### A. Prudent Investor Claim

Plaintiff's first claim is that Defendant breached its fiduciary duty of prudence in violation of 29 U.S.C. § 1104(a)(1). (FAC ¶¶ 84–88). Specifically, Plaintiff alleges that "Defendant violated ERISA fiduciary standards . . . by failing to prudently invest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 24-00642-MWF (ADSx)          **Date:** January 28, 2026

**Title:** Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan

the OIA in a manner consistent with the investment objectives of the ESOP and its participants[.]" (*Id.* ¶ 86).

Defendant moves for judgment on the pleading on this claim on two grounds: (1) that the statutory exemption from diversification for ESOPs creates a complete bar to this claim; and (2) even if the exemption does not apply, the decision to hold liquid assets rather than riskier assets was prudent as a matter of law. (Motion at 8–13).

### 1. Diversification Exemption

Defendant's principal argument is that Plaintiff's first claim necessarily challenges the Plan's failure to "diversify" away from cash equivalents and is thus barred by § 1104(a)(2). This presents an initial question of statutory interpretation: Does the diversification exemption found in § 1104(a)(2) extend to non-employer security assets, such as the OIA, held within an ESOP?

The Ninth Circuit has not addressed this precise issue, and district courts appear to have reached divergent conclusions. Defendant points to *Trull v. McCreary Modern, Inc.*, Case No. CV 25-00011-KDB-SCR, 2025 WL 2803605 (W.D.N.C. Oct. 1, 2025), where the court held that the exemption applies to "any part of the plan," including an ESOP's "cash buffer," because requiring diversification of those assets would undermine the ESOP's purpose of providing liquidity for repurchases. *Id.* at *3–4. Conversely, in *Schultz v. Aerotech, Inc.*, Case No. CV 24-618, 2025 WL 563585 (W.D. Pa. Feb. 20, 2025), the court described the exemption as limited to employer stock, and allowed a claim similar to Plaintiff's to proceed past the pleading stage. *Id.* at *6, 9.

Despite the dearth of case law, the Court considers the plain language of the statute relatively clear. Section 1104(a)(2) provides:

> In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 24-00642-MWF (ADSx)          **Date:** January 28, 2026

**Title:**     Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan

---

diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities (as defined in section 1107(d)(4) and (5) of this title).

29 U.S.C. § 1104(a)(2).

The structure of this provision contains two express limitations that matter here. First, § 1104(a)(2) relaxes the duty of prudence only "to the extent that it requires diversification." *Id.* It does not eliminate the duty of prudence wholesale. Second, the exempt conduct is limited to the "acquisition or holding" of "qualifying employer securities" (or real property). *Id.* In other words, the statute does not purport to exempt the management of other assets from prudence review simply because those assets are held within an ESOP.

This plain interpretation also comports with the defining feature of ESOPs: concentrated investment in employer stock. Because the statutory purpose of an ESOP is to encourage employees' ownership of their employer's stock, *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009), of course an ESOP fiduciary should not face liability for putting too many eggs in the "company stock" basket. But that rationale does not clearly extend to the other assets within an ESOP which do not reflect employee ownership.

Defendant argues that statutory purpose points in its favor, noting that ESOPs require liquidity to satisfy repurchase obligations triggered by departing plan participants, and that allowing prudence challenges based on an ESOP's liquidity accounts would undermine ordinary ESOP administration. (Motion at 9–10). But this argument conflates the existence of a duty with the satisfaction of that duty. If the liquidity needs of a plan necessitate a large cash position, that is a defense on the merits regarding whether the plan's specific allocation was prudent.

Defendant's reliance on language in *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014), does not compel a different interpretation. In *Dudenhoeffer*, the Supreme Court held that there is no special presumption of prudence for an ESOP

---

**CIVIL MINUTES—GENERAL**                         6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  SACV 24-00642-MWF (ADSx)                              **Date:**  January 28, 2026
**Title:**    Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan

fiduciary's decision to buy and hold company stock.  573 U.S. at 418.  The Supreme Court did not address the scope of the diversification exemption.  Rather, it noted the diversification exemption only to explain that Congress had modified the duty of prudence "in a precisely delineated way," leaving no general exemption from the duty of prudence for ESOPs.  *Id.* at 419.

Defendant correctly notes that, in summarizing the exemption, the Supreme Court stated generally that ESOP fiduciaries "need not diversify the fund's assets."  *Id.* at 412; *see also id.* at 419.  However, the Court views this language in the context of the specific question presented in *Dudenhoeffer*: the duties of a fiduciary regarding a dropping company stock price.  Other portions of the opinion clarify that § 1104(a)(2) only modifies the duty of prudence "in a precisely delineated way," and that the statute "establishes ***the extent to which***" fiduciary duties are "loosened in the ESOP context."  *Id.* at 419 (emphasis added).

Ultimately, the real lesson from *Dudenhoeffer* is that ESOP fiduciaries are subject to the duty of prudence except where Congress has explicitly said otherwise.  Because § 1104(a)(2) is limited to diversification-based objections to the "acquisition or holding" of "qualifying employer securities" or real property, it does not, by its terms, immunize the management of non-employer-security assets such as the OIA from scrutiny under § 1104(a)(1)'s duty of prudence.

### 2. Sufficiency of Allegations of Imprudence

Having concluded that the statutory exemption does not bar Plaintiff's first claim, the Court proceeds to consider whether Plaintiff has plausibly alleged that Defendant's conduct regarding the OIA was imprudent.

"ESOP fiduciaries are subject to the duty of prudence just as other ERISA fiduciaries are."  *Dudenhoeffer*, 573 U.S. at 419; *see also* 29 U.S.C. § 1104(a).  An ESOP fiduciary must therefore "discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 24-00642-MWF (ADSx)            **Date:** January 28, 2026

**Title:** Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan

like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

At the pleading stage, "it is not enough for a plaintiff simply to allege that the fiduciaries could have obtained better results — whether higher returns, lower risks, or reduced costs — by choosing different investments. Instead, a plaintiff must provide 'some further factual enhancement' to take the claim across 'the line between possibility and plausibility.'" *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1021 (9th Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), *cert. granted sub nom. Anderson v. Intel Corp. Inv.*, No. 25-498, 2026 WL 120679 (U.S. Jan. 16, 2026). "[W]hen a plaintiff alleges imprudence based on a fiduciary's decision to make one investment rather than an alternative, '[t]he key to nudging an inference of imprudence from possible to plausible is providing a sound basis for comparison — a meaningful benchmark — not just alleging that costs are too high, or returns are too low.'" *Id.* at 1022 (quoting *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022)).

Here, Plaintiff has done more than allege that Defendant should have pursued "higher returns" or "riskier assets." Plaintiff alleges an objective "mismatch" between the Plan's assets and its purpose as a retirement plan. (*See* FAC ¶¶ 48–53). Plaintiff also points to relevant comparators, alleging that the APP ESOP holds 100 times more cash equivalents than the median cash holdings of comparator ESOP plans (and that measure excludes the APP ESOP's short-term treasuries). (*See id.* ¶ 55). "That vast disparity [between plans] supports a reasonable inference of a lack of prudence." *Schultz*, 2025 WL 563585, at *9 (concluding that similar allegations were sufficient at the pleading stage).

At the hearing, Defendant argued that the APP ESOP Plan Document actually prohibits the type of long-term investment approach Plaintiff contends a prudent fiduciary would have adopted for the OIA. The relevant provision of the Plan Document states:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  SACV 24-00642-MWF (ADSx)    **Date:**  January 28, 2026
**Title:**    Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan

>   This Plan is designed to invest primarily in Employer Securities, which is a Qualifying Employer Security with respect to the Employer within the meaning of Code Sections 409(1) and 4975(e)(8). ***The ESOP Committee may direct the Trustee, however, to invest in assets other than Employer Securities to provide for expenses and distributions and to the extent the Trustee and ESOP Committee deem appropriate***.

(Plan Document, Art. IX, ¶ 9.05 (emphasis added)).

This language does not foreclose Plaintiff's claim as a matter of law. Paragraph 9.05 does not mandate any specific asset class in the OIA, nor does it forbid investment in the longer-term vehicles Plaintiff proposes. Indeed, the provision explicitly grants Defendant discretion to invest OIA assets "to the extent the . . . Committee deem[s] appropriate." (*Id.*).

Moreover, even if ¶ 9.05 is understood to limit the purpose of the OIA to facilitating "expenses and distributions," it does not follow that a particular cash and short-term treasuries strategy is prudent as a matter of law. Whether Defendant in fact faced liquidity needs of the magnitude and timing that would justify this particular OIA allocation is a context- and fact-dependent question not suitable for resolution on the pleadings. *See, e.g.*, *Schultz*, 2025 WL 563585, at *9 ("The specific factual context of the [ESOP] may justify the cash equivalent strategy, including, for example, its share price outlook, anticipated retirements or separations of participants, expected payout amounts, etc. . . Those (currently unknown) facts, however, . . . would not be appropriate for consideration at this stage of the case."). And Plaintiff further alleges that many investment vehicles typically associated with long-term strategies could still be liquidated as needed, undermining the suggestion that a long-term allocation is necessarily inconsistent with the Plan's ability to fund distributions. (FAC ¶ 44).

Finally, Defendant's argument ignores the principle that "the duty of prudence trumps the instructions of a plan document." *Dudenhoeffer*, 573 U.S. at 421; *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 24-00642-MWF (ADSx) | **Date:** January 28, 2026 |
| **Title:** Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan | |

Generally, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [ERISA] shall be void as against public policy." 29 U.S.C. § 1110(a). In other words, a fiduciary cannot blindly follow plan terms if doing so would be imprudent. It therefore remains plausible that Defendant breached the duty of prudence even while attempting to comply with its interpretation of ¶ 9.05 of the Plan.

Accordingly, the Motion is **DENIED** as to Plaintiff's prudent investor claim.

### B.      Prohibited Transaction Claim (Second Claim)

Plaintiff's second claim is that Defendant engaged in a prohibited transaction in violation of 29 U.S.C. § 1106(a)(1)(D). (FAC ¶¶ 89–94). Specifically, Plaintiff argues that Defendant violated the statute "by using the OIA funds for the benefit of APP by pursuing a heavily conservative investment strategy designed to preserve the principal balance of the OIA for the purpose of relieving APP from its obligation to repurchase shares when employees request a distribution from the ESOP." (*Id.* ¶ 92). Defendant argues that Plaintiff fails to state a claim because (1) that alleged conduct cannot constitute a "transaction"; and (2) any such "transaction" was not for an improper purpose. (Motion at 14–16).

Section 1106(a)(1)(D) provides, in relevant part, that an ERISA fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1). A "party in interest" includes "any fiduciary" of the plan and "an employer." 29 U.S.C. § 1002(3)(14)(A), (C).

It is true that to allege a violation of § 1106(a)(1), "a plaintiff must identify an unlawful transaction." *Hernandez v. AT&T Servs., Inc.*, Case No. CV 25-00676-ODW (PVCx), 2025 WL 3208360, at *5 (C.D. Cal. Nov. 14, 2025) (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996)); *see also Wright*, 360 F.3d at 1101 (explaining that the decision to "continue to hold" a particular investment is "not a transaction" for §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 24-00642-MWF (ADSx) | **Date:** January 28, 2026 |
| **Title:** Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan | |

1106 purposes); *David v. Alphin*, 704 F.3d 327, 340 (4th Cir. 2013) ("Courts have held that a decision to continue certain investments, or a defendant's failure to act, cannot constitute a 'transaction' . . . The common understanding of the word 'transaction' implies that an affirmative action is required.").

Here, Plaintiff sufficiently identifies affirmative investment activity with regard to the OIA, namely an alleged 2021 reallocation in which Defendant moved approximately half of the OIA from a money market fund into a short-term treasury fund. (FAC ¶ 18). Courts have recognized that such affirmative purchases suffice to satisfy the "transaction" component of a § 1106(a) claim, even where a defendant argues the allegations otherwise resemble a mere decision to continue a certain investment strategy. *See, e.g.*, *Baird v. BlackRock Institutional Tr. Co.*, Case No. CV 17-01892, 2021 WL 105619, at *3 (N.D. Cal. Jan. 12, 2021) (concluding that each affirmative investment decision to move funds into a specific investment vehicle constitutes a transaction).

Defendant attempts to distinguish *Baird* by noting that the case involved alleged self-dealing where the fiduciary invested in its own managed funds. (Reply at 15). But that distinction does not clearly relate to the threshold question of whether a "transaction" occurred. Moreover, § 1106(a)(1)(D) does not only implicate direct transfers to a party in interest. It also prohibits the "use by or for the benefit of" a party in interest. 29 U.S.C. § 1106(a)(1)(D). Plaintiff alleges here that the 2021 reallocation was for Defendant's "use" of the OIA for the benefit of APP and APP's repurchase obligations. (FAC ¶¶ 64, 92).

Defendant next argues that, even if Plaintiff has alleged a "transaction," he has failed to allege it was "prohibited" under *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996). In *Spink*, the Supreme Court held that the "payment of benefits" in accordance with plan terms is not a prohibited transaction, even if the employer receives some incidental benefit. 517 U.S. at 894–95. Defendant contends that because the OIA funds would be used to repurchase shares — *i.e.*, pay benefits — the conduct is immunized. (Reply at 17–18).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 24-00642-MWF (ADSx) | **Date:** January 28, 2026 |
| **Title:** Gustavo Moran v. ESOP Committee of the Aluminum Precision Products, Inc. Employee Stock Ownership Plan | |

      This argument misapplies *Lockheed* to the facts alleged. Plaintiff is not alleging that any repurchase transaction is prohibited. Rather, Plaintiff alleges that the prohibited transaction was a particular antecedent decision to retain excessive cash and then excessively reallocate into short-term treasuries. (FAC ¶¶ 89–93). "Unlike in *Lockheed*, where the alleged benefit to the employer was distinct and unrelated to any financial risk to the plan itself," Plaintiff here has plausibly alleged that the primary purpose of the 2021 transaction was to serve APP's interest in liquidity rather than the participants' interest in long-term growth. *See Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 949 (N.D. Cal. 2024) (distinguishing *Lockheed* and denying motion to dismiss where "the alleged 'transaction' is [the employer's] reallocation of undisputed plan assets to reduce its own matching contribution.").

      The Court does not hold that maintaining a liquid reserve or "cash buffer" within an ESOP is a per se prohibited transaction. The Court holds only that Plaintiff has plausibly alleged that Defendant caused the Plan to engage in affirmative investment transactions to create an allegedly *excessive* buffer for the employer's benefit. At this stage, those allegations are sufficient to state a claim under § 1106(a)(1)(D).

      Accordingly, the Motion is **DENIED** as to Plaintiff's prohibited transaction claim.

## V.   CONCLUSION

      The Motion is **DENIED**.

      IT IS SO ORDERED.